Filed 11/22/21  C.W. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| C.W., | |
| Petitioner, | E077653 |
| v. | (Super.Ct.No. J287541) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Erin K. Alexander, Judge.  Petition denied.

Clark & Le and Mark Oliver for Petitioner.

No appearance by Respondent.

Steven O'Neill, County Counsel and Joseph R. Barrell, Deputy County Counsel for Real Party in Interest.

1

In this writ proceeding filed pursuant to California Rules of Court, rule 8.452, petitioner C.W. (father) seeks relief from the juvenile court's order terminating his reunification services and setting a hearing under Welfare and Institutions Code[1] section 366.26 for his child C.W. Jr. (child). Father contends San Bernardino County Children and Family Services (CFS) failed to provide him with reasonable reunification services.[2] We deny the petition.

FACTS

In September 2020, the child was born prematurely (at 27 weeks gestation) and with amphetamines in his system. Due to severe medical concerns, the child remained hospitalized after mother was discharged. A hospital social worker reported to CFS that both mother and father visited the child "infrequently, often late at night, and appear[ed] to be under the influence." Also, father "at times [became] verbally aggressive with the nursing staff." In November 2020, father was asked not to return to the hospital because he was caught breaking into cars in the hospital parking lot. He was arrested after he came to the hospital anyway.[3]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The child's mother is not a party in this proceeding, and will be discussed only as necessary for context.

[3] Father was arrested on November 5, 2020. According to father's criminal history, he was arrested on that date for violating the terms of his supervised release (Pen. Code, § 3455) and unlawful possession of ammunition (*id.*, § 30305, subd. (a)(1)). At some points in the record, this arrest is described as taking place at the child's bedside. Father, however, told a social worker that he was walking down the street when he was stopped and searched by police because he was on parole, and he was arrested when they

*[footnote continued on next page]*

In December 2020, the child was detained from parents' custody, but remained hospitalized; it was expected he would need to remain hospitalized for at least the next 10 weeks, and that he would have ongoing "severe and complex medical needs." In the dependency petition, CFS alleged the child came within section 300, subdivision (b)(1), based on issues arising from both parents' homelessness, substance abuse, and history of domestic violence, as well as subdivision (j), based on dependencies involving older children of mother.

Father was not present for the detention hearing on December 18, 2020, because he was incarcerated at San Bernardino's Central Detention Center (CDC), which was on a facility wide quarantine. The court found CFS had established a prima facie case that the child came within section 300 and for out of home detention, and ordered the child detained from parents' custody.

On January 7, 2021, a social worker interviewed father at CDC. Father denied attempting to break into cars at the hospital, claiming that he was just looking for his car and was not sure which was his, so he was trying his key on different cars to see if it would fit. He denied substance abuse issues or engaging in domestic violence with mother. The social worker noted, however, that father's denials were inconsistent with other evidence. Hospital security had approached father on several occasions when he was observed attempting to break into cars, and he ran away when approached; he was caught on the second or third occasion. Mother reported smoking methamphetamines

_____

found a bullet in his backpack, "of which he claims he was not aware." For present purposes, we need not resolve this discrepancy.

3

together with father, and she stated that there had been three incidents of domestic violence with father that caused her to call law enforcement. Father's criminal history included arrests for domestic violence during the period he was with mother, and there were open dependency cases in Arizona regarding several older children of mother that involved alleged domestic violence between mother and father.

The jurisdiction and disposition hearing was initially set for January 19, 2021, but was continued to allow father to complete paternity testing. At the continued jurisdiction and disposition hearing in March 2021, father was present, but remained in custody. The juvenile court found father to be the child's biological father based on the results of the paternity testing. It also found the dependency petition's allegations true, except for the allegation based on father being homeless, since he was in custody. CFS recommended that father not be provided reunification services based on his "lack of involvement and his current circumstances." The trial court, however, ordered that both parents be provided services, with father's supervised visitation to commence upon his release from custody.

In advance of the six month review hearing in September 2021, CFS reported that the social worker had not been able to visit father at CDC due to pandemic related restrictions. Father was released from custody on July 16, 2021. He did not immediately contact CFS, however, and CFS did not learn of his release until August 10, 2021. On that date, the social worker—not the one who had interviewed father in January 2021, but a new one, assigned to the case a few days after that interview—called CDC to gather

4

information from father about possible relative placements for the child, to ask father about "his plan to start his reunification services when released as services are not provided at CDC," and to "discuss visits." The officer on duty informed her that father had already been released. The same day, the social worker discovered that father was "currently homeless."

The social worker was subsequently unable to contact father directly. The child's paternal grandmother, however, confirmed that father was homeless, as was mother, and stated that mother and father "continue to use drugs together." The paternal grandmother also stated that mother had told her that father was "disturbing her" and that father did not have a phone. Subsequently, mother told the social worker that father was homeless and he continued to use drugs. She said that father had been stalking her and she planned to seek a restraining order against him.

At the review hearing, CFS and minor's counsel recommended that the court terminate the parents' reunification services and set a section 366.26 hearing. Father, through counsel, presented no affirmative evidence, but argued that he had not been provided with reasonable services, noting that the case plan called for monthly contact with the social worker, which had not happened.[4] Father's counsel represented that

---

[4] We note that the case plan in our record, cited by father as the source of the monthly contact provision, describes the case plan participants as including only mother and child, and does not mention father. Nevertheless, any case plan in which father might have participated, whether this one or one developed for him separately, would have included some similar provision. (See *In re T.G.* (2010) 188 Cal.App.4th 687, 698 [noting that social worker is "charged with maintaining reasonable contact with the parents during the course of the reunification plan"].)

father had stated he tried "multiple times" to contact CFS since his release but had not been successful in doing so.

The juvenile court found that neither parent had made substantive progress on the case plan and that reasonable services had been provided. Regarding father's reunification services, the court commented: "I do find that reasonable services were provided. I'll note that it's unfortunate that the pandemic had multiple effects, but it's clear by the information in today's report that the agency had no ability to visit the father at CDC due to COVID restrictions and no services were provided at CDC during the COVID restrictions. The father was then released. I have no evidence before the Court that the father has contacted the agency, but I do have multiple attempts by the agency to locate the father to engage him in services. They tried to locate him through his relatives as well as the mother to make contact for that and I find that that is reasonable and sufficient."

## DISCUSSION

Father does not fault CFS for his receiving no reunification services while he was incarcerated from December 2020 to July 2021. It is undisputed that no services were then available to CDC inmates due to the pandemic. Rather, he focuses on the social worker's failure to make monthly contact with him during his incarceration. He further argues that the trial court failed to consider his lack of access to services during incarceration, which, combined with the social worker making "no effort to set up services for him [until] after he was released," acted to "'thwart reunification.'" In his

6

view, the juvenile court's reasonable services finding must be reversed, along with "all other findings and orders made at the six-month review hearing" that rest on that "inadequate foundation." We are not persuaded.

"'Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible."' [Citation.] Therefore, reasonable reunification services must be offered to a parent." (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.) The agency "must make a good faith effort to develop and implement reasonable services responsive to the unique needs of each family . . . in spite of difficulties in doing so or the prospects of success." (*Ibid.*; see also *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1113 ["Absent a finding of detriment, even incarcerated parents are entitled to reasonable reunification services"].) Nevertheless, "'[r]eunification services are voluntary . . . and an unwilling or indifferent parent cannot be forced to comply with them.'" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365.) Reunification services are not inadequate simply because the parent is unwilling or indifferent. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220; see also *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5 [social worker is not required to "take the parent by the hand and escort him or her to and through" services].)

"The adequacy of the reunification plan and of the agency's efforts to provide suitable services is judged according to the circumstances of the particular case." (*Christopher D. v. Superior Court, supra*, 210 Cal.App.4th at p. 69; see also *In re Misako R.* (1991) 2 Cal.App.4th 538, 547 ["The standard is not whether the services provided

7

were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances"].)  We review the juvenile court's order finding sufficient reunification services under the substantial evidence standard.[5]  (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.)  We resolve all conflicts in support of the juvenile court's determination, examine the record in the light most favorable to the juvenile court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order.  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379.)

---

[5] Some courts have applied the abuse of discretion standard of review to a juvenile court's order regarding reunification services.  (See, e.g., *In re Angelique C.* (2003) 113 Cal.App.4th 509, 523-524, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)  We view the trial court's ruling regarding the adequacy of the agency's efforts to provide reunification services to be at least primarily a factual determination, properly subject to substantial evidence standard of review.  (See *In re Caden C.* (2021) 11 Cal.5th 614, 640-641 [in similar context, holding factual determinations, including those that underpin exercise of discretion, are properly reviewed for substantial evidence].)  We would reach the same conclusions if we were to frame all or part of our discussion in terms of the abuse of discretion standard.  (See *id.* at p. 641 ["While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced"].)

We also note that some courts have held that harmless error analysis does not apply to review of a reasonable services finding.  (*In re A.G.* (2017) 12 Cal.App.5th 994, 1004-1005; but see *In re Ronell A.*, *supra*, 44 Cal.App.4th at pp. 1365-1366 [concluding that even if court erred in finding services were reasonable, the error would not be prejudicial].)  In light of our holding here, we need not consider whether harmless error analysis is appropriate or, if so, the results of such an analysis.

First, father is simply incorrect that the juvenile court failed to take into account his inability to receive services during his incarceration. The juvenile court expressly acknowledged that circumstance in announcing its ruling. We understand the juvenile court's comments to suggest it may have made a different decision if there were evidence that father exercised any diligence regarding his case plan after his release, precisely because it was considering the pandemic related restrictions on services at CDC.

Further, the record supports the conclusion that father did not receive more services primarily because of his own unwillingness or indifference, not failures by CFS. Although father's counsel represented that father claimed to have tried to contact CFS on multiple occasions, there is no evidence showing any such attempts either during or after his incarceration. (See *Biron v. City of Redding* (2014) 225 Cal.App.4th 1264, 1269, fn. 1 ["Of course, the statement of an attorney is not evidence"].) At the very least, when father was released, he could have and should have immediately informed CFS of his changed contact information, and, more to the point, that he was out of jail and could begin working on his case plan, including by visiting with the child and by engaging in services. (See § 316.1, subd. (a) [parent must designate mailing address to be used by court and agency, notify court or agency in writing of a new mailing address]; *In re T.G.*, *supra*, 188 Cal.App.4th at p. 698 ["While it is true the social worker is charged with maintaining reasonable contact with the parents during the course of the reunification plan, he or she cannot do so without some degree of cooperation from the parent"].) Indeed, at the jurisdiction and disposition hearing, the juvenile court instructed: "I'll

9

caution both parents that because this is a child under the age of three you need to show progress in your case plan within the first six months. So, sir, you'll want to contact the agency as soon as you're released." Father did not follow this instruction.

To be sure, the record suggests several ways CFS might have done more to attempt to engage father in his case plan. There is no evidence that a copy of the plan was sent to father during his incarceration, as the trial court instructed CFS to do. There is also no evidence that CFS attempted to contact father by phone or mail (since in-person visits were not possible) between the March 2021 jurisdiction and disposition hearing when services were ordered and the August 10, 2021 call when the social worker learned father had been released. Although pandemic related restrictions on visitation made it impossible for the social worker to make in-person visits to father in jail, there is no evidence that phone or mail contact was similarly disrupted.

Nevertheless, once the social worker discovered father had been released, she made diligent efforts to attempt to contact him, without success. Together with the evidence of father's behavior during the period after his release from prison, it was reasonable for the juvenile court to infer that CFS was ready and willing to provide reasonable reunification services to father, and that it was his own unwillingness or indifference to participating in his case plan that caused him not to receive any such services. Thus, viewed in the required, deferential light, the juvenile court's ruling was supported by substantial evidence, and we may not disturb it.

10

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____

J.

We concur:

MILLER _____

Acting P. J.

CODRINGTON _____

J.